UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN E. KRAMER,                    Case No. 08-15198

                  Plaintiff,           Robert H. Cleland
v.                                     United States District Judge

COMMISSIONER OF                        Michael Hluchaniuk
SOCIAL SECURITY,                       United States Magistrate Judge

                  Defendant.
_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)**

I.    **PROCEDURAL HISTORY**

      A.    Proceedings in this Court

      On December 18, 2008, plaintiff filed the instant suit seeking judicial review

of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Robert H. Cleland referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

Social Security Disability Insurance Benefits.  (Dkt. 2).  This matter is currently

before the Court on cross-motions for summary judgment.  (Dkt. 8, 11).

B.      Administrative Proceedings

Plaintiff filed the instant claims on October 4, 2005, alleging that she became unable to work on March 18, 2005.  (Dkt. 7, Tr. at 47).  The claim was initially disapproved by the Commissioner on January 19, 2006.  (Dkt. 7, Tr. at 37-41).  Plaintiff requested a hearing and on April 9, 2008, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Henry Perez, Jr., who considered the case *de novo*.  In a decision dated July 25, 2008, the ALJ found that plaintiff was not disabled.  (Dkt. 7, Tr. at 14-22).  Plaintiff requested a review of this decision on August 12, 2008.  (Dkt. 7, Tr. at 9-10).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on November 7, 2008, denied plaintiff's request for review.  (Dkt. 7, Tr. at 5-7); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

II.     **STATEMENT OF FACTS**

    A.     <u>ALJ Findings</u>

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, that she has not engaged in substantial gainful activity since March 18, 2005, and that her asthma and adult attention deficit disorder were severe impairments.  (Dkt. 7, p. 18).  The ALJ found that plaintiff's depression, hypothyroidism, and fibromyalgia were not severe impairments.  (Dkt. 7, p. 18).

The ALJ concluded that plaintiff's depression was not severe.  While she reported a history of depression for ten years, including treatment with anti-depressants, nonetheless, she had not sought treatment for depression since her alleged onset and the condition was only subjectively reported and without medical evidence to support classification as a severe impairment.  (Dkt. 7, p. 18). A state agency consultant also found that plaintiff's depression was non-severe. *Id*.

The ALJ found that plaintiff's fibromyalgia was non-severe.  The ALJ found a lack of indicators that must be present in order to establish the existence of the condition.  The American College of Rheumatology established criteria in 1990 for the diagnosis of fibromyalgia.  The ALJ found that none of plaintiff's treating records documented clinical findings of the specificity required to establish fibromyalgia.  (Dkt. 7, pp. 18-19).

The ALJ concluded that plaintiff's asthma did not meet Listing 3.03 because she had not suffered the requisite number of attacks and hospitalizations.  In November 2005, she reported that she had not had an attack within the last year.  Further, she did not suffer from chronic asthmatic bronchitis as evaluated under 3.02A.

Next, the ALJ found that plaintiff's mental impairment (adult attention deficit disorder) does not meet or medically equal the criteria of any of the adult mental disorder listings in 12.00 of the Listing of impairments.  In making this finding, the ALJ considered whether the"'paragraph B" criteria were satisfied.  As noted by the ALJ, to satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that plaintiff had no restrictions of her activities of daily living and no difficulties in social functioning.  With regard to concentration, persistence or pace, the ALJ concluded that plaintiff had mild difficulties.  The ALJ found that plaintiff had experienced no episodes of decompensation.  Because her mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ concluded that the "paragraph B" criteria were not

satisfied.  The ALJ also considered whether the "paragraph C" criteria were satisfied, and concluded that the evidence failed to establish the presence of the "paragraph C" criteria.

The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of impairments (SSR 96-8p).  In considering plaintiff's symptoms, the ALJ followed a two-step process in which it must first be determined whether there are underlying medically determinable physical or mental impairments–i.e., impairments that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce plaintiff's or other symptoms.  Second, once it is shown that underlying physical or mental impairments could reasonably be expected to produce plaintiff's pain or other symptoms, the intensity, persistence, and limiting effects of plaintiff's symptoms must be evaluated to determine the extent to which they limit plaintiff's ability to do basic work activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, a finding on the credibility of the statements must be made based on a consideration of the entire case record.

At the hearing on April 9, 2008, plaintiff testified that she stopped working in 2005 on the advice of her doctor.  She explained that her doctor recommended leaving her work environment due to mold in the building.  She also reported memory, concentration fatigue, and an inability to talk due to hoarseness.  Plaintiff testified that most of her symptoms improved after she got out of the environment with the mold.  However, she indicated that her symptoms including fatigue, memory loss, and inability to concentrate have worsened.  She testified that most nights she sleeps nine hours, but she is never refreshed.  Plaintiff indicated that she sleeps at least once during the day for thirty minutes to an hour, and more on other days.  She explained that she has not sought treatment for her memory and concentration difficulties because there is nothing they can do for her.  As to her daily routine, plaintiff testified that she goes on the internet occasionally and also checks her email on and off.  Some days she cannot drive secondary to fatigue and also has made driving mistakes due to her memory and concentration deficits.  She testified that she has a constant tightness in her chest and does not have stamina for physical activities.  For example, plaintiff testified that she can walk around the block, can stand for ten to fifteen minutes at a time, and lift ten to fifteen pounds. She indicated that she does not have any sitting restrictions and could sit for an hour at a time.  Plaintiff also testified that her husband helps her with the shopping,

Report and Recommendation
Cross-Motions for Summary Judgment
*Kramer  v. Comm'r*; No. 08-15198

cooking, and cleaning.  She testified that she reads, sews, quilts, and tries to do water aerobics when she is able.

The ALJ noted that plaintiff was prescribed and took appropriate medications for her asthma, which weighs in her favor, but found that the medical records revealed that the medications and avoidance of respiratory irritants has been effective in controlling her symptoms.  When she applied for benefits, she indicated that her asthma was one of the conditions that limited her ability to work.  However, as the testimony indicated at the hearing once plaintiff was no longer exposed to the mold in her work environment, her symptoms resolved.  In particular, treatment notes in July 2005 included notes of improved symptoms including shortness of breath, cough, fatigue, and dizziness.  Moreover, in the fall of 2005, she indicated that she had not had an asthma attack in the last year.  Additionally, throughout 2005 and 2006, pulmonary testing was within normal limits.  By March 2007, treatment notes indicated that her medication was working well and that she had not had to use her rescue inhaler.  Treatment notes continued to note improvement specifically indicating that plaintiff was "doing quite well" and was without symptoms in 2008.  The ALJ concluded, based on the foregoing history, that plaintiff was limited to no work with toxins and no concentrated exposure to respiratory irritant so as to avoid a repeat of her symptoms, and she

was also limited to light work with lifting no more than twenty pounds occasionally and ten pounds frequently.

The ALJ next examined plaintiff's fibromyalgia. Although she reported fatigue, which sometimes has been linked to a diagnosis of fibromyalgia, she had not consistently reported the symptoms for a duration of more than 12 months at a time. The record reflected that plaintiff failed to even mention this impairment on numerous occasions. She failed to report fatigue to her primary care physician in 2007 with the exception of September, but denied any complaints in December 2007. She reported fatigue as recently as March 2008, but the treatment notes indicated that an adjustment in the thyroid medication was all that was recommended. The ALJ also pointed out that, despite plaintiff's reports to various physicians of fatigue, in the beginning of March 2005, just before her onset, she indicated that she did strength training and aerobics four to six days per week. The ALJ also referred to evidence that plaintiff experienced and reported fatigue prior to her alleged onset date at a time that she was able to continue working. She indicated that the fatigue began in the summer of 2004. According to the ALJ, the fact that the impairment did not prevent her from working at that time strongly suggested that it would not prevent work on an ongoing basis. Moreover, despite reports of fatigue to the treating physicians, plaintiff and her husband completed Function Reports in November 2005 detailing extensive daily activities. These

activities include preparing meals, walking and feeding her dogs, cleaning, doing laundry, ironing, gardening, shopping, canning, walking, swimming, going to church, and biweekly meetings with Michigan Military Moms.  Plaintiff and her husband indicated that she was slower in some of these activities since the onset of her impairment.  Although plaintiff indicated that she did not handle stress well, her husband indicated that she was able to deal with the same by walking or immersing herself in a task.  Further on March 18, 2008, plaintiff indicated that she did light housework and that her hobbies included quilting and reading. She also indicated that she was able to dress and feed herself as well as take care of her own personal needs.

As to plaintiff's allegations regarding a cognitive impairment that affected her ability to remember, concentrate, and focus, the medical evidence revealed that she was diagnosed with adult attention deficit disorder (ADD) in 2005.  She initially reported an inability to focus and distractibility.  However, after her initial diagnosis, treatment notes from 2006 through 2008 showed that plaintiff was "doing extremely well" with no acute complaints and no chronic complaints.  Her physician reported that she was doing well on Adderall, her prescription for the ADD.  Treatment notes indicate that in early March 2006 "'no problems [were] reported."

Report and Recommendation
Cross-Motions for Summary Judgment
*Kramer  v. Comm'r*; No. 08-15198

Plaintiff underwent neuropsychological testing on April 19, 2005 (a seven-hour test) for her cognitive and memory difficulties.  The testing revealed only mild abnormalities and the examining physician, R. Michael Kelly M.D., only recommended cognitive training. Her IQ was in the above-average range and overall the testing was within norma1 limits, revealing a Global Assessment of functioning (GAF) of 75.  The Diagnostic and Statistical Manual of mental Disorders, Fourth Edition, (DSM-IV) indicates that such a GAF score reflects that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social occupational, or school functioning (e.g., temporarily falling behind in schoolwork)."  On December 16, 2005, a consultative examination indicated that plaintiff's GAF was 60 to 65.  The DSM-IV indicates that such a GAF score corresponds to "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  The examination revealed that plaintiff's affect was full range and appropriate.  She told the examiner that she enjoyed walking, swimming, and reading.  She also reported that she occasionally attended church, did household chores, was able to cook a proper meal, and watched television.  The consultative examiner concluded

that despite plaintiff's report of depressive symptoms, her prognosis was fair. Furthermore, despite her cognitive complaints of fatigue, loss of memory, and an inability to concentrate, she had continued to be able to quilt and read. According to the ALJ, these are not activities one would expect given plaintiff's allegations disabling cognitive impairments. In addition, at the hearing, plaintiff requested an amended alleged onset date to January 15, 2007, which the ALJ found also supported a finding of non-disability during 2005 and 2006 as well as non-disability through the present.

As for opinion evidence, the chief of pulmonary medicine at Wayne State University, Bohdan Pichurko, M.D., indicated that plaintiff could not tolerate lifting weights, bending, and ascending stairs for more than a brief period of time. However, he also opined that activities such sitting, standing, walking at a reduced pace would not be limited. Dr. Pichurko emphasized that he only had a single meeting with plaintiff near the time of her alleged onset and was focused exclusively on her respiratory impairment. Given that plaintiff's respiratory impairment resolved when she left her employment, the ALJ gave Dr. Pichurko's opinion reduced weight.

Additionally, a state agency physician opined that plaintiff did not have a severe mental impairment. The residual functional capacity conclusions reached by the physician employed by the State Disability Determination Services also

supported a finding of "not disabled."  Although the physician was non-examining, and, therefore, the opinion did not deserve as much weight as those of examining or treating physicians, the ALJ found that the opinion had some weight in this particular case because there existed a number of other reasons to reach similar conclusions, as explained throughout the ALJ's decision.

The ALJ concluded that, after considering the evidence of record, plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they are inconsistent with the residual functional capacity assessment.  Noting plaintiff's past relevant work as a counselor, which is sedentary in exertion and skilled in nature, and comparing plaintiff's residual functional capacity with the physical and mental demands of this work, the vocational expert testified that plaintiff was able to perform this work as actually and generally performed.  Thus, the ALJ found that plaintiff was not disabled from her past relevant work and denied benefits on this basis.

B.   Parties' Arguments

1.   Plaintiff's claims of error

Plaintiff argues that the ALJ's residual functional capacity finding was not made pursuant to proper legal standards because it fundamentally conflicted with

his finding at step two of the sequential evaluation regarding plaintiff's severe impairments. Specifically, in his decision denying benefits, the ALJ found that plaintiff had a severe mental impairment of ADD. However, in the ALJ's finding regarding plaintiff's residual functional capacity, he failed to include any mental limitation. According to plaintiff, this conflicts with the regulations, which define what a "severe impairment" is at step two of the sequential evaluation. That is, when the ALJ included plaintiff's adult ADD as a "severe impairment" at step two of the sequential evaluation, he was finding this impairment had "more than a minimal effect on her mental ability(ies) to perform basic work activities." Therefore, if plaintiff's adult (ADD had more than a minimal effect on her mental ability to perform basic work activities, it stands to reason, according to plaintiff, that she should have some type of mental limitation included in her residual functional capacity. Given the last hypothetical question posed by the ALJ and the vocational expert's answer – if plaintiff's non-exertional limitations were considered along with here exertional limitations, there would be no work considering plaintiff's fatigue, memory loss and concentration problems – plaintiff argues that, at a minimum, a remand is necessary to further explore plaintiff's mental limitations.

2.      Commissioner's counter-motion for summary judgment

The Commissioner urges the Court to reject plaintiff's argument that the ALJ's finding that her ADD was a "severe impairment" at step two of his sequential analysis required the ALJ to include "some type of mental limitation" in his residual functional capacity finding.  According to the Commissioner, the medical evidence in the record did not support any functional limitations based on plaintiff's ADD.  Residual functional capacity is an assessment of what an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a).  According to the Commissioner, the substantial evidence supported the ALJ's residual functional capacity finding, despite his exclusion of any limitations concerning plaintiff's ADD because the objective medical evidence and medical source opinions in the record did not support any limitations due to plaintiff's ADD.

Specifically, in April 2004, Dr. Drasnin noted that plaintiff's responses to an ADHD checklist reflected "a strong possibility of attentional problems," prompting him to recommend further neuropsychological testing.  However, in April 2005, Dr. Drasnin completed his previously recommended testing and found that plaintiff functioned within normal limits.  According to the Commissioner, because Dr. Drasnin supported his opinion with objective medical evidence, the ALJ had a reasonable basis for giving it controlling weight.  See 20 C.F.R. § 404.1527(d)(2).

The Commissioner also argues that Dr. Drasnin's opinion that plaintiff's slight impairment in mental functioning would not cause her difficulty while working was also consistent with other medical opinions and evidence in the record. For instance, in December 2005, Dr. Qadir found no evidence of a thought disorder, and despite plaintiff's complaints of memory problems, he noted that she was able to give a very good history and had no problems recalling recent and remote information. He did not diagnose plaintiff with ADD, but rather he assessed her GAF at 60 to 65, reflecting mild to moderate symptoms, and concluded that plaintiff's prognosis was fair. In January 2006, Dr. Tripp found that plaintiff had only mild limitations in maintaining concentration, persistence, and pace, with no severe impairments. Other treatment notes in the record were also consistent with Dr. Drasnin's opinion, showing that plaintiff responded well to Adderall, from March 2005 through May 2007. Treatment notes from this period also routinely indicated that plaintiff had no problems with her mood, affect, or memory. Plaintiff's daily activities also suggested that she had no disabling cognitive impairments, as she maintained the ability and attentiveness to read, sew quilts, and prepare three meals per day, including the preparation of a complete dinner. Because Dr. Drasnin's opinion was supported by objective medical evidence and was not inconsistent with other substantial evidence in the record, the regulations required that the ALJ give Dr. Drasnin's opinion controlling weight. 20

C.F.R. § 404.1527(d)(2).  The Commissioner argues that since Dr. Drasnin did not believe plaintiff's ADD or other mental impairments caused her any difficulty functioning at work, the ALJ's residual functional capacity finding should be upheld.

The Commissioner also argues that plaintiff's remaining argument that the ALJ did not accurately portray her impairments in the ALJ's hypothetical question to the vocational expert is essentially mooted by the above analysis.  That is, hypothetical questions posed to a vocational expert are appropriate as long as they are consistent with impairments and limitations supported by the record.  Since the ALJ supported his hypothetical question with substantial evidence from the record, according the Commissioner, the testimony constituted substantial evidence and the ALJ's decision should be upheld.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and

Report and Recommendation
Cross-Motions for Summary Judgment
*Kramer  v. Comm'r*; No. 08-15198

finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    <u>Governing Law</u>

1.    Burden of proof

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### 2.    Substantial evidence

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).   A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight."  Soc.Sec.R. 9602p, 1996 WL 374188, *5 (1996).  The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not "inconsistent with the other substantial evidence in [the] case record."  *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the claimant sees her "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition."  20 C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"  *Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).  "Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability

benefits." *Smith v. Comm'r of Social Security*, 482 F.3d 873, 875 (6th Cir. 2007). "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).

      C.    <u>Analysis and Conclusions</u>

          1.    Mental Impairment, RFC, and hypothetical question

Plaintiff argues that the ALJ's residual functional capacity finding was not made pursuant to proper legal standards because it fundamentally conflicted with his finding at step two of the sequential evaluation regarding plaintiff's severe impairments. Specifically, in his decision denying benefits, the ALJ found that plaintiff had a severe mental impairment of ADD. However, in the ALJ's finding regarding plaintiff's residual functional capacity, he failed to include any mental limitation. According to plaintiff, this conflicts with the regulations, which define what a "severe impairment" is at step two of the sequential evaluation. After review of the record, I conclude that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to plaintiff's claim. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite

conclusion.  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other

words, where substantial evidence supports the ALJ's decision, it must be upheld.

As to an allegedly disabling mental impairment, the Commissioner has

promulgated a special technique to ensure that all evidence needed for the

evaluation of such a claim is obtained and evaluated.  This technique was designed

to work in conjunction with the sequential evaluation process set out for the

evaluation of physical impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  Congress

laid the foundation for making disability determinations when mental impairments

are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or
> (I) of this section that an individual is not under a
> disability, in any case where there is evidence which
> indicates the existence of a mental impairment, shall be
> made only if the Commissioner has made every
> reasonable effort to ensure that a qualified psychiatrist or
> psychologist has completed the medical portion of the
> case review and any applicable residual functional
> capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure."  20

C.F.R. § 404. 1520a(d).  The regulation further requires the standard document to

be completed and signed by a medical consultant at the initial and reconsideration

levels, but provides other options at the administrative law judge hearing level.  *Id*.

Under this procedure, the Commissioner must first make clinical findings, as to

whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id.* The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long to permit the timely completion of tasks found in work settings. *Id.* The final functional area, that of "deterioration or decompensation in work or work-like settings," refers to the claimant's ability to tolerate increased mental demands associated with competitive work. *Id.*

Report and Recommendation
Cross-Motions for Summary Judgment
*Kramer v. Comm'r*; No. 08-15198

The degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace) is rated using a five-point scale:  None, mild, moderate, marked, and extreme.  *Pauley v. Comm'r of Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008).  The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale:  None, one or two, three, four or more.  *Id*.  "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."  *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4).  Ratings above "none" and "mild" in the first three functional areas and "none" in the fourth functional area are considered severe.  *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(d)(1).  If the first two functional areas receive ratings of "none" or "slight," the third a rating of "never" or "seldom," and the fourth a rating of "never," the Commissioner will conclude that the mental impairment is not severe, and that it cannot serve as the basis for a finding of disability.  *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the Commissioner must decide whether it meets or equals a listed mental disorder.  *Merkel*, at *10, citing, 20 C.F.R. § 1520a(c)(2).  The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met.  *Merkel*, at *10, citing, 20 C.F.R. Pt.

404, Subpt. P, App. 1, § 12.02, *et. seq*.  If the severe mental impairment does not

meet a listed mental disorder, the Commissioner must perform a residual functional

capacity assessment to determine whether the claimant can perform some jobs

notwithstanding his mental impairment.  *Merkel*, at *10, citing, 20 C.F.R.

§§ 404.1520a(c)(3), 416.920a(c)(3).

  The ALJ found that plaintiff's mental impairment (adult attention deficit

disorder) did not meet or medically equal the criteria of any of the adult mental

disorder listings in 12.00 of the Listing of impairments.  In making this finding, the

ALJ considered whether the "paragraph B" criteria were satisfied.  As noted by the

ALJ, to satisfy the "paragraph B" criteria, the mental impairment must result in at

least two of the following:  marked restriction of activities of daily living; marked

difficulties in maintaining social functioning; marked difficulties in maintaining

concentration, persistence, or pace; or repeated episodes of decompensation, each

of extended duration. The ALJ found that plaintiff had no restrictions of her

activities of daily living and no difficulties in social functioning. With regard to

concentration, persistence or pace, the ALJ concluded that plaintiff had mild

difficulties.  The ALJ found that plaintiff had experienced no episodes of

decompensation.  Because her mental impairment did not cause at least two

"marked" limitations or one "marked" limitation and "repeated" episodes of

decompensation, the ALJ concluded that the "paragraph B" criteria were not

satisfied.  The ALJ also considered whether the "paragraph C" criteria were

satisfied, and concluded that the evidence failed to establish the presence of the

"paragraph C" criteria.  Despite plaintiff's assertions to the contrary, the medical

evidence in the record does not support any functional limitations based on

plaintiff's ADD.  Residual functional capacity is an assessment of what an

individual can still do despite her limitations and the substantial evidence supports

the ALJ's residual functional capacity finding, despite his exclusion of any

limitations concerning plaintiff's ADD based on a lack of medical evidence.

 As noted by the ALJ, the mental residual functional capacity assessment

used at steps 4 and 5 of the sequential evaluation process requires a more detailed

assessment by itemizing various functions contained in the broad categories found

in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing

of impairments (SSR 96-8p).  In considering plaintiff's symptoms, the ALJ

followed a two-step process in which it must first be determined whether there are

underlying medically determinable physical or mental impairments–i.e.,

impairments that can be shown by medically acceptable clinical and laboratory

diagnostic techniques–that could reasonably be expected to produce plaintiff's or

other symptoms.  Second, once it is shown that underlying physical or mental

impairments could reasonably be expected to produce plaintiff's pain or other

symptoms, the intensity, persistence, and limiting effects of plaintiff's symptoms

must be evaluated to determine the extent to which they limit plaintiff's ability to do basic work activities.

To the extent that plaintiff points to other subjective limitations, such subjective evidence is only considered to "the extent [it] can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Ditz v. Comm'r of Soc. Sec.*, 2009 WL 440641, *10 (E.D. Mich. 2009), citing, 20 C.F.R. § 404.1529(a), *Young v. Secretary*, 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan v. Sec'y*, 801 F.2d 847, 852 (6th Cir. 1986).  In this case, there is no such evidence and the ALJ's RFC finding was entirely consistent with the restrictions imposed by her treating physicians.  Indeed, plaintiff's claim of additional restrictions and limitations beyond those imposed by her treating physician seems based on the mere existence of her condition, rather than on any resulting impairments or specific restrictions.  While the record reveals that plaintiff's condition resulted in several limitations, as found by the ALJ, the mere existence of her ADD is insufficient to establish an inability to work.  *See e.g.*, *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (The residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities."); *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004) ("A claimant's severe

impairment may or may not affect his or her functional capacity to do work.  One does not necessarily establish the other."); *Griffeth*, 217 Fed.Appx. at 429 ("The regulations recognize that individuals who have the same severe impairment may have different residual functional capacities depending on their other impairments, pain, and other symptoms.").

Given that a severe impairment does not equate to disability, the undersigned suggests that the ALJ's decision to find plaintiff's claimed limitations to be only partially credible is supported by the substantial evidence in the record and properly incorporated into the RFC finding.  The ALJ's obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate."  *Jones*, 336 F.3d at 476.  When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses.  *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir. 1999).  An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "The rule that a hypothetical question must incorporate all of

the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey*, 987 F.2d at 1235. This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

For this analysis, the ALJ noted that whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, a finding on the credibility of the statements must be made based on a consideration of the entire case record. (Dkt. 7, p. 18). The ALJ examined plaintiff's medical records and reports of fatigue and found that her onset of fatigue occurred long before she stopped working there was virtually no evidence (in her medical records or her self-prepared function reports) that her fatigue impaired her activities or daily living or her ability to work. (Dkt. 7, p. 19). As to plaintiff's allegations regarding a cognitive impairment that

affected her ability to remember, concentrate, and focus, the medical evidence revealed that she was diagnosed with adult attention deficit disorder (ADD) in 2005. She initially reported an inability to focus and distractibility. However, after her initial diagnosis, treatment notes from 2006 through 2008 showed that plaintiff was "doing extremely well" with no acute complaints and no chronic complaints. Her physician reported that she was doing well on Adderall, her prescription for the ADD. Treatment notes indicate that in early March 2006 "no problems [were] reported."

Plaintiff underwent neuropsychological testing on April 19, 2005 (a seven-hour test) for her cognitive and memory difficulties. The testing revealed only mild abnormalities and the examining physician, R. Michael Kelly M.D., only recommended cognitive training. Her IQ was in the above-average range and overall the testing was within normal limits, revealing a Global Assessment of functioning (GAF) of 75. The Diagnostic and Statistical Manual of mental Disorders, Fourth Edition, (DSM-IV) indicates that such a GAF score reflects that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." On December 16, 2005, a consultative examination indicated that plaintiff's GAF was 60 to 65. The DSM-IV indicates

that such a GAF score corresponds to "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  The examination revealed that plaintiff's affect was full range and appropriate.  She told the examiner that she enjoyed walking, swimming, and reading.  She also reported that she occasionally attended church, did household chores, was able to cook a proper meal, and watched television.  The consultative examiner concluded that despite plaintiff's report of depressive symptoms, her prognosis was fair.  Furthermore, despite her cognitive complaints of fatigue, loss of memory, and an inability to concentrate, she had continued to be able to quilt and read.  According to the ALJ, these are not activities one would expect given plaintiff's allegations disabling cognitive impairments.  In addition, at the hearing, plaintiff requested an amended alleged onset date to January 15, 2007, which the ALJ found also supported a finding of non-disability during 2005 and 2006 as well as non-disability through the present.  Based on the foregoing, detailed analysis of the record evidence, the undersigned finds no basis to disturb the ALJ's credibility findings or his analysis of plaintiff's mental impairment.

The ALJ's RFC findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed

plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence.  *See Griffeth*, 217 Fed.Appx. at 429; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Thus, the undersigned finds no basis to disturb the conclusions of the ALJ.

### 2.    Conclusion

After review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## IV.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474

U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Administrative Order 09-AO-042. The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

|                              | s/Michael Hluchaniuk                    |
|------------------------------|-----------------------------------------|
| Date: January 5, 2010        | Michael Hluchaniuk                      |
|                              | United States Magistrate Judge          |

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 5, 2010, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Joseph E. Houle, Judith Levy, AUSA, and the Commissioner of Social Security</u>.

s/Darlene Chubb           
Judicial Assistant
(810) 341-7850
darlene_chubb@mied.uscourts.gov
